835 So.2d 953 (2003)
Fragepani BELL, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00274-COA.
Court of Appeals of Mississippi.
January 28, 2003.
*954 Raymond L. Wong, Cleveland, attorney for appellant.
Office of the Attorney General by: Jeffrey A. Klingfuss, attorney for appellee.
Before McMILLIN, C.J., THOMAS and CHANDLER, JJ.
McMILLIN, C.J., for the Court.
¶ 1. Fragepani Bell was convicted of one count of sexual battery and one count of attempted sexual battery by a jury in the Circuit Court of Bolivar County. Bell has appealed that conviction to this Court and raises two issues for us to consider. He argues that the trial court erred in not granting a new trial after it was learned that one juror had allegedly withheld information concerning her prior acquaintance with Bell during voir dire. Secondly, he claims that the evidence of his guilt was insufficient as a matter of law to sustain the jury's verdict. Finding neither claim to have merit, we affirm.

I.

Facts
¶ 2. According to the State's version of events, Bell forced one eight-year-old female to perform fellatio on him and immediately thereafter attempted to force another female of the same age to perform a similar act. These events allegedly occurred while Bell was living temporarily in the home of the mother of one of the young girls in an apparent romantic relationship. Bell testified in his own defense and denied that the incident occurred. He suggested that the accusations had been made in retaliation for Bell having permanently left the home after arguing with the girl's mother.

II.

Juror's Failure to Respond During Voir Dire
¶ 3. The venire members were questioned regarding whether any of them were acquainted with the defendant. Margaret Hall, one member of the panel, did not respond to that question and she was ultimately selected to serve on the jury that convicted Bell. According to Bell's counsel, within minutes of the jury's verdict, Bell informed his attorney that, in fact, he and Juror Hall were acquaintances. These facts formed the basis of one of Bell's claims for a new trial raised in his post-verdict motion.
¶ 4. Hall was brought in to testify at a hearing on Bell's motion. Hall said that she had been acquainted with Bell approximately thirty years earlier when he had apparently had some sort of relationship with one of Hall's sisters; however, she claimed not to have recognized Bell, whom she had not seen for over twenty years, when he stood before the venire during *955 voir dire. She testified that she had not recognized him by name because, in their earlier acquaintanceship, she had known him by his nickname, "Frag." It is unclear from her testimony exactly when she made the connection and realized that she did have a prior acquaintanceship with the defendant; nevertheless, it is not disputed that, whenever that event occurred, she did not, of her own volition, notify any authority connected with the conduct of the trial.
¶ 5. The trial court denied the new trial motion, concluding that Hall did not wrongfully conceal her prior acquaintanceship with Bell during voir dire because, at the time, she did not realize that the defendant was the "Frag" Bell she had known approximately thirty years earlier. This finding of fact certainly finds support in the record and this Court, sitting as an appellate court, is obligated to give substantial deference to such determinations by the trial court sitting as finder of fact. Taylor v. State, 789 So.2d 787, 793 (¶ 23) (Miss.2001). What that finding leaves unanswered, however, are the questions of (a) when did Hall realize the existence of the prior relationship, and (b) what effect her continued silence after coming to that realization had on Bell's ability to obtain a fair trial from an unbiased jury.
¶ 6. Certainly, it can be argued with some force that a juror's failure to speak out during the course of a trial once she realizes the inaccuracy of her responses to inquiries made during voir dire has the potential to undermine the fundamental fairness of the trial. That is not to suggest that the problem arises out of any misconduct on the juror's part. It is simply based on the notion that the importance of the information in ensuring that a fair and impartial jury is selected is not diminished by the fact that, even for purely innocent reasons, it remained undiscovered until after the jury was seated and the trial had begun. The effect of undisclosed informationsuch as a prior personal relationship between juror and defendantcan be as destructive to a fair trial when it is realized only after the jury is seated as it would be were it to be purposely concealed during voir dire. See Burroughs v. State, 767 So.2d 246, 253 (¶ 21) (Miss.Ct.App.2000).
¶ 7. In Odom v. State, 355 So.2d 1381 (Miss.1978), the Mississippi Supreme Court set out the proper matters to be considered when a defendant claims that he has been denied a fair trial because a juror failed to reveal pertinent information during voir dire. These issues include an analysis of whether (a) the inquiry was relevant, (b) whether it was plain and unambiguous, and (c) whether the unresponsive juror had substantial knowledge of the information. Id. at 1383. If the court answers these issues in the affirmative, then the court must then consider whether permitting the juror to serve was prejudicial to the defendant's receiving a fundamentally fair trial. Id.
¶ 8. We must necessarily modify the three initial inquiries in Odom slightly in this case to account for the fact that Juror Hall did not have "substantial knowledge" of her prior acquaintanceship at the time the jury was seated since that knowledge only came to her later during the trial. Certainly the realization came at a time that it could have been dealt with by seating an alternate juror should an inquiry have satisfied the trial court that Hall's continued service was prejudicial to Bell.
¶ 9. The trial court concluded, in effect, that the realization of a long-ago acquaintanceship with the defendant that had been at an end for over twenty years was not the sort of personal relationship that would necessarily call into question the ability of Hall to serve as a fair and impartial *956 juror. According to Odom, such a question is vested in the trial court's sound discretion and can only be disturbed by this Court on appeal if we find the decision clearly wrong. Id.
¶ 10. We do not think the trial court was plainly wrong in so holding. An acquaintanceship that was effectively severed over twenty years earlier and resulted in such a loss of contact that Hall was unable to recognize Bell when they came in close contact in the courtroom does not appear to be the sort of relationship that would undermine her ability to weigh the evidence impartially and return a fair verdict based solely on the evidence. During the inquiry on Bell's new trial motion, Hall indicated that she did not feel that her prior acquaintanceship with Bell had in any way affected her ability to be a dispassionate juror. The trial court plainly believed her and we have no basis to disturb that evaluation of the juror's credibility. Bush v. State, 585 So.2d 1262, 1265 (Miss. 1991).
¶ 11. Additionally, there is consideration of Bell's role in the matter. He did not testify at the new trial motion hearing. The only information in the record is the motion itself, in which trial counsel indicated that Bell had informed him of the acquaintanceship at 5:10 p.m. on December 1, 2000. This was the last day of the guilt phase of the trial. The record does not reflect what time the jury retired to consider its verdict, but it does show that the jury announced having reached a verdict at 5:21 p.m. Thus, it is a fair assumption that Bell and defense counsel were both aware of this matter prior to the jury returning its verdict and that they purposely chose not to reveal the matter to the trial court. Whether a more timely disclosure would have permitted the court to inquire further and, if it appeared appropriate, to substitute an alternate juror for Hall is not entirely clear, but it is crystal clear that the defense withheld the information until after the jury had returned its verdict, a time when any possible corrective action was impossible. It is a fundamental precept of judicial procedure that a party, upon becoming aware of any matter deemed harmful to that party's cause in the litigation, must contemporaneously make the court itself aware of the matter so that the harm may be dealt with appropriately and a mistrial avoided if at all possible. Johnson v. State, 477 So.2d 196, 210 (Miss.1985). In this instance, it appears that Bell was content to conceal the information from the courtperhaps hopeful that Hall would view him in a kindly light based on their prior acquaintanceshipand only brought it to light belatedly when the prospect of such an occurrence was gone.
¶ 12. We are satisfied that there was no error in denying a new trial motion on this ground for either of two foregoing reasons, i.e., (a) that the long-abandoned acquaintanceship did not necessarily establish the kind of prejudice to Bell's defense that would have disqualified Hall as a fair and impartial juror, and (b) that Bell's failure to timely disclose the relationship in an apparent effort to gain some advantage from his relationship with Hall, no matter how the jury decided the issue of his guilt, amounted to a waiver of the right to complain.

III.

The Sufficiency of the Evidence
¶ 13. At the close of the evidence, Bell filed a motion for a directed verdict of acquittal. The motion was denied. After the jury returned a verdict of guilty on both counts, Bell filed a motion for a JNOV. The trial court denied this motion also and Bell contends on appeal that these *957 rulings constitute reversible error. Both of these motions constitute a claim that the evidence to convict was insufficient as a matter of law.
¶ 14. The trial court, in considering the motions, must consider the evidence in the light most favorable to the State, giving the State the benefit of all favorable inferences which may be reasonably drawn from the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). The court is obligated to reverse and render a judgment of acquittal when it determines that, viewed in that light, the State's evidence as to one or more of the critical elements of the crime is so lacking that reasonable jurors could not have found appellant guilty. Id. If the trial court denies the motions and that denial is raised as an issue on appeal, this Court is charged to review the evidence by the same standard to determine whether the trial court erred in so ruling. Id. at 781.
¶ 15. As to the count of sexual battery, the prosecution had the burden to prove beyond a reasonable doubt that (1) Bell engaged in sexual penetration with one of the young females by inserting his penis into her mouth, (2) Bell was twenty-four or more months older than the victim, and (3) the victim was under the age of fourteen years. Miss.Code Ann. § 97-3-95(1)(c) (Rev.2000). As to the charge of attempted sexual battery, the prosecution had to show that (1) Bell attempted to engage in sexual penetration with the other child by trying to insert his penis into her mouth, (2) Bell was twenty-four or more months older than this second victim, and (3) the victim was also under the age of fourteen years. See Miss.Code Ann. § 97-1-7 (Rev.2000) (attempt).
¶ 16. The prosecution proved its case principally through the testimony of the two young victims who, despite their tender years, were competent to testify. Bell's defense consisted essentially of his own denial that any such events occurred. He also points out that no medical records were introduced to substantiate the charges, but we find that contention unpersuasive.
¶ 17. The uncorroborated testimony of the victim in a case such as this is sufficient evidence to convict if accepted as true by the finder of fact. Collier v. State, 711 So.2d 458, 462 (¶ 18) (Miss.1998). "It is well settled that in such a case of conflicting testimony, each distinct view is absorbed into the minds of the jury as the finders of fact, and it is within the province of the jury to determine the credibility among several witnesses." Jackson v. State, 614 So.2d 965, 972 (Miss.1993). The jury as the fact finder determined the testimony of the girls to be more credible than that of Bell. There is no reasoned basis for this Court to now declare that the jury erred in so finding. Having fully reviewed the record, including the transcript of the victims' testimonies, we find that substantial evidence exists to support the verdicts of guilty as to both charges.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY OF CONVICTION OF COUNT I SEXUAL BATTERY AND SENTENCE OF TEN YEARS AND COUNT II ATTEMPTED SEXUAL BATTERY AND SENTENCE OF TEN YEARS TO RUN CONCURRENTLY TO SENTENCE IN COUNT I AND BOTH SENTENCES TO RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.
*958 KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.