McMILLIN, C.J., for the Court.
¶ 1. Keith Boggans was convicted by a Madison County Circuit Court jury on three counts of armed robbery arising out of an incident that occurred in a Hardee’s Restaurant in that county. Boggans has appealed his conviction and asserts three *281 grounds to have his conviction overturned, (a) He claims that the trial court erred when it failed to suppress his post-detention statement to investigating officers implicating him in the crimes, (b) He contends that the court erred in denying his mistrial motion when it was pointed out to the court, after trial had commenced, that the jury had not been sworn in using the special oath required in capital cases, (c) Finally, he contends that the court erred in denying him a new trial on the ground that the verdicts of guilty were against the weight of the evidence. We find no reversible error and affirm.
I.
Facts
¶ 2. Two individuals robbed three employees of Hardee’s Restaurant located in Madison County on County Line Road at gunpoint in the early morning hours of April 3, 2000. Acting on information .provided by witnesses, police officers, within minutes of the robbery, pulled over a vehicle being driven by Boggans. The two individuals who had actually committed the robberies were in the back seat along with the money obtained in the robbery.
¶ 3. Acting on the theory that Boggans aided and abetted the robbery by acting as driver of the get-away vehicle, the State indicted him, along with the other two individuals, for armed robbery. After his arrest, Boggans gave a statement to an investigating officer in which he essentially admitted his involvement in the crime. He later sought to have the statement suppressed in a hearing held prior to commencement of his trial but was unsuccessful in doing so.
¶4. Boggans subsequently testified in his own defense at trial. He claimed to have no knowledge of the real reason the two individuals had gone into the restaurant, saying that they had told him they were going to use the restroom.. He testified before the jury that he gave the incriminating statement because he felt it was the only way that he would be permitted to use a telephone to alert relatives to his predicament and enlist their assistance in obtaining his release on bail.
¶ 5. The jury found him guilty on three counts and this appeal ensued.
II.
Failure to Suppress Confession
¶ 6. Boggans’s contention was that his .statement was involuntary as having been obtained through coercive techniques that included promises of leniency if he would confess. ■ At the suppression hearing, the officer who took the statement testified that he had informed Boggans that if he chose to give a voluntary statement that fact would be reported to the District Attorney’s office. The officer repeatedly denied having promised any form of leniency in exchange for the statement or having threatened Boggans with harsher treatment if he declined to give a statement. He testified to having thoroughly reviewed all of Boggans’s rights commonly known as Miranda rights and that, after indicating his understanding of those rights, Boggans declared his desire to waive those rights and offer a voluntary statement. Boggans elected not to testify at the suppression hearing. The circuit court found that the State had established beyond a reasonable doubt that Boggans’ confession was freely and voluntarily offered and was not produced by unconstitutional coercive tactics employed by law enforcement.
¶ 7. We review challenges to admissibility of confessions on an abuse of discretion standard. Smith v. State, 737 So.2d 377(¶ 11) (Miss.Ct.App.1998). The *282 circuit court sits as trier of fact and is in the best position to make the necessary decisions as to witness credibility that are often critical in such hearings. Id. at (¶ 12).
¶ 8. There is authority for the proposition that a promise of lenient treatment in exchange for making an incriminating statement to investigating officers constitutes the sort of coercion that destroys the free and voluntary nature of the resulting admissions, rendering them inadmissible under the Fifth Amendment, which prevents a suspect from being compelled to be a witness against himself. Carley v. State, 739 So.2d 1046(¶16) (Miss.Ct.App.1999) (citing Neal v. State, 451 So.2d 743, 750 (Miss.1984); Morgan v. State, 681 So.2d 82, 87 (Miss.1996)). However, the mere offer to report to prosecuting authorities the fact that the defendant agreed to make a statement regarding his involvement in the matter under investigation, standing alone, has been said to not rise to the level of constitutionally-prohibited coercion on the part of law enforcement officials. Layne v. State, 542 So.2d 237, 240-41 (Miss.1989). The Mississippi Supreme Court has said, rather, that this offer to report cooperation must be combined with other evidence of oppressive or coercive treatment in order to support a claim of involuntariness. Id. at 240.
¶ 9. Boggans concedes this point in his brief and argues that additional coercive tactics designed to compel him to make a statement are shown by the fact that he was detained for approximately twelve hours before he made the statement without benefit of consultation with an attorney or even the opportunity make a telephone call to a family member. The evident problem with this contention, even if it is conceded for sake of argument that proof of such conduct would be sufficient, is that there is no evidence relating to the nature of Boggans’s confinement or a showing that he was, in fact, denied an opportunity to contact someone by telephone to alert them to his predicament. The only officer testifying for the prosecution indicated that he was called onto the case shortly before he interrogated Bog-gans and that he was unaware of the circumstances of Boggans’s confinement up until that time. Defense counsel made repeated attempts during his cross-examination of the officer to gain a concession as to the nature of Boggans’s confinement, and the propounded questions plainly indicated what Boggans contended were the circumstances under which he was held; however, questions asked during cross-examination, no matter how pointed, simply do not constitute evidence. Boggans elected not to testify at the suppression hearing and, thus, the potential evidence concerning his post-arrest treatment and the effect it may have had on his decision to offer an incriminating statement was not available for the trial court’s consideration, nor is it available for our review on appeal.
¶ 10. Based on our review of the evidence available for the trial court’s consideration in ruling on Boggans’s suppression motion, we are unpersuaded that the trial court erred in finding that Boggans’s statement was freely and voluntarily offered after he had been fully and completely apprized of his rights while in custody, including specifically the right against incriminating himself in the criminal activity under investigation. This issue is, for that reason, found to be without merit.
III.
The Issue of the Oath Administered to the Jury
¶ 11. After the jury had been empaneled and testimony from the first witness for the prosecution had been received, *283 defense counsel brought to the attention of the trial court that the jury had not been properly sworn to try the matter as a capital case under the requirement of Section 13-5-73 of the Mississippi Code, though it had been sworn under the provisions of Section 13-5-71. At that point, the trial court offered to the defense that it would properly swear the jury and require the prosecution to re-examine the first witness. Defense counsel neither accepted nor rejected this proposed solution offered by the trial court, indicating that he wanted to take no action that might later be construed as a waiver of the perceived error. The trial court took no further action in regard to curing the omission of the required oath and Boggans now asserts the failure of the jury to take the appropriate oath as reversible error.
¶ 12. It is undisputed that the jurors were administered the following oath according to the language found in Section 13-5-71 of the Mississippi Code:
You, and each of you, do solemnly swear (or affirm) that you will well and truly try all issues and execute all writs of inquiry that may be submitted to you, or left to your decision by the court, during the present term, and true verdicts give according to the evidence. So help you God.
¶ 13. Despite this fact, Boggans points out that Section 13-5-73 of the Mississippi Code contains the following provision:
The jurors in a capital case shall be sworn to “well and truly try the issue between the state and the prisoner, and a true verdict give according to the evidence and the law.”
Miss.Code Ann. § 13-5-73 (Rev.2002).
¶ 14. There is some case law indicating that the failure to administer this special oath in capital cases is reversible error, though it is not entirely clear from the case that the error was the same as the one now before -.this Court. In Miller v. State, a murder case, the jurors “were sworn to answer questions as to their qualifications on the voir dire examination” but were not administered a subsequent oath until after testimony had begun. Miller v. State, 122 Miss. 19, 84 So. 161 (1920). In that situation, the Mississippi Supreme Court concluded that permitting unsworn jurors to hear evidence that might subsequently affect their deliberations had the effect of hopelessly tainting the verdict on the basis that the taking of the oath was intended to heighten the “conscientious manner in which [the jurors] received and considered the evidence....” Id. at 20, 84 So. at 162. The text of the oath actually taken by the jurors is not stated in the Miller case, but, in view of the language indicating that the potential jurors were sworn only to answer truthfully inquiries as to their qualifications and not to properly try the issues of any case set for trial during their term of service, it would appear that there is a basis to distinguish the facts of Miller from those in the case now before us.
¶ 15. More on point is the 1992 case of Wilburn v. State, 608 So.2d 702 (Miss.1992). In Wilburn, the facts are undisputed that the jurors received the somewhat broader oath presently found in Section 13-5-71, but, after being specifically chosen to try a rape case, it was made to appear that the jurors may not have been administered the oath required by Section 13-5-73. In that case, the possible failure to give the jury the proper oath was discovered before completion of cross-examination of the first witness. The trial court denied defense counsel’s motion for mistrial and the matter was raised as error on appeal. The supreme court found, as fact, that the two oaths were “substantially equivalent,” and that “[t]o suggest otherwise is to exalt form over substance.” Id. *284 at 705. Based on that conclusion, the supreme court found “no reversible error for the possible omission of the administration of two separate oaths under the facts of this case.” Id. (emphasis added). Earlier, the supreme court found the relevant particular facts of the case to be (a) that there was no doubt that the oath prescribed by Section 13-5-71 was given; (b) the defendant declined any suggested attempt by the trial court to cure the error once discovered; (c) the jury did not impose life imprisonment; and (d) the jurors were not selected from a special venire assembled for the sole purpose of trying a capital case. Id. at 703.
¶ 16. We find the case before us to be in essentially the same posture, and, relying on the precedent found in Wilburn, conclude that the failure to administer the second oath to the jurors, as set out in Section 13-5-73, was not reversible error.
IV.
Defendant’s Challenge to the Quality and Quantity of the State’s Proof
¶ 17. Boggans, as his final issue in this appeal, mounts an attack on the evidence supporting the jury’s conviction. It is not entirely clear from our review of the brief whether he is claiming the evidence was insufficient to sustain his conviction as a matter of law or whether his contention is that the verdict was against the weight of the evidence. These two issues, though related, are not identical. If the State has failed to offer any credible evidence as to one or more of the essential elements of the crime, then the proof is said to be insufficient as a matter of law and the defendant’s conviction must be reversed and rendered on appeal. McKee v. State, 756 So.2d 793(¶ 6) (Miss.Ct.App.1999) (citing Franklin v. State, 676 So.2d 287, 288 (Miss.1996)). However, if the State has presented competent evidence as to each essential element, this Court may, nevertheless, conclude that the weight of the evidence, when viewed in its entirety, so pointed towards acquittal that the trial court should have ordered a new trial in order to avoid a manifest injustice. Hogan v. State, 854 So.2d 497(¶ 17) (Miss.Ct.App.2003).
If 18. The evidence demonstrates that Boggans was arrested driving the getaway vehicle only moments after an armed robbery occurred. The actual robbers were in the back seat, a pistol was discovered in the vehicle, and the money taken in the robbery was recovered from the car. Boggans asserts his innocence based essentially on his own testimony that he thought the two robbers had only gone into the restaurant to use the restroom. By well-established precedent, we are required to review the evidence in the light most favorable to upholding the verdict of the jury. E.g., Bell v. State, 835 So.2d 953(¶14) (Miss.Ct.App.2003). Additionally, we must afford deference to the conclusions reached by the jury on essential issues of fact on which the evidence was disputed, and we are not permitted to simply substitute our judgment for that of the jury on such matters. Hogan, 854 So.2d at (¶ 17). Lastly, we must assume that the jury drew all inferences in favor of the defendant’s guilt that were reasonably supported by the evidence. Id.
¶ 19. Viewed in that light, we are satisfied that the State presented evidence directly implicating Boggans as a willing participant in the scheme to rob the Har-dee’s Restaurant. We are also satisfied that Boggans’s countering evidence, consisting principally of his own denials of knowledge of the robbery and proof that he did not attempt to flee once police officers signaled for him to pull the vehicle over, was not of such probative value as to *285 lead to the conclusion that the jury’s decision to reject it resulted in a substantial miscarriage of justice. We, therefore, find no basis to either reverse and render Bog-gans’s conviction or to reverse the conviction and remand this matter to the trial court for a new trial.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF COUNT I, ARMED ROBBERY, AND SENTENCE OF THIRTY YEARS, COUNT II, ARMED ROBBERY, AND SENTENCE OF THIRTY YEARS, AND COUNT IV, ARMED ROBBERY, AND SENTENCE OF THIRTY YEARS, WITH THE LAST FIVE YEARS OF EACH SENTENCE STAYED AND SUSPENDED AND THAT PORTION OF THE SENTENCE SHALL BE SERVED ON SUPERVISED PROBATION FOR A PERIOD OF FIVE YEARS, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. SENTENCES IMPOSED IN COUNT II AND COUNT IV SHALL RUN CONCURRENTLY WITH SENTENCE IMPOSED IN COUNT I. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.