LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. A jury in the Monroe County Circuit Court convicted Donald R. Whitfield of Count I, fondling, and Count II, sexual battery. The jury was unable to reach a unanimous verdict with regard to Count III, sexual battery. In regard to Count I, Whitfield was sentenced to seven years in the custody of the Mississippi Department of Corrections (MDOC), with five years suspended and five years post-release supervision. In regard to Count II, Whitfield was sentenced to serve thirty years in the custody of the MDOC. The trial court ordered the sentence in Count I to be served consecutively to the sentence in Count II, and the court ordered Whitfield to pay $1,000 in restitution to the Mississippi Children’s Trust Fund.
¶ 2. Whitfield filed post-trial motions, which were ultimately denied. Whitfield filed this appeal arguing that the guilty *624 verdict for sexual battery is against the overwhelming weight of the evidence.
FACTS
¶ 3. On April 8, 2007, D.W.,[1] who was ten years old, was spending the weekend with her father and stepmother. D.W. became upset at having to return to her mother’s house and informed her father that her mother’s boyfriend, Whitfield, had molested her on several occasions, the most recent time on April 5, 2007. D.W.’s father took her to Gilmore Memorial Regional Medical Center in Amory, Mississippi.
¶ 4. Deborah Rogers, a social worker at the hospital, was called in to interview D.W. Rogers indicated that D.W. was crying and acting anxious, scared, and apprehensive. D.W. told Rogers that Whitfield had been touching her in her vaginal and rectal area with his penis. Carla Horn, a children’s counselor, conducted the forensic interview on April 11, 2007. Horn testified that D.W. disclosed a series of abuses by Whitfield which began when D.W. was approximately five years old. D.W. told Horn that during these assaults, “white stuff came out [of Whitfield’s penis] about twelve times.” D.W. also stated that Whitfield had put his “boy thing inside of her butt” several times, and he made her “suck on his boy thing” approximately fifteen times. During the most recent episode, on April 5, 2007, D.W. stated that Whitfield rubbed his penis on her vagina until “white stuff came out all over the outside of her [vagina.]”
¶ 5. Shalotta Sharp, a registered nurse who is also certified as a sexual assault nurse examiner, performed a sexual-assault examination on D.W. on April 11, 2007. D.W. had complained of genital discomfort, itching, and discharge. Sharp noted a white discharge, healed vesicular lesions around D.W.’s genitals, and an abnormal hymen, which was consistent with sexual penetration. Sharp stated that she took a sample of the discharge on D.W.’s outer genitals and sent it to the laboratory for testing. Sharp indicated that the test for trichomonas, a sexually transmitted disease (STD), came back negative. However, Sharp testified that the white discharge experienced by D.W. was consistent with a response to trichomonas. Sharp stated that trichomonas can be dormant for months to years at a time without the patient experiencing any symptoms. Due to the healed lesions, Sharp conducted a herpes test, which came back positive. The particular test conducted on D.W. did not distinguish between the two types of herpes viruses, Herpes Simplex Virus I (HSV-I) or Herpes Simplex Virus II (HSV-II).
¶ 6. In September 2009, D.W. was sent to Lisa Cooper, a nurse practitioner, for further testing. Cooper indicated that she performed a non-specific herpes test on D.W. The test was used to determine the presence of two antibodies, IGG and IGM. The IGG test was negative, and the IGM test was positive. Cooper testified that the IGM test indicated that D.W. had been exposed to the herpes virus at least one time. Cooper testified that D.W. also tested positive for trichomonas. Cooper also tested Whitfield for trichomonas on December 22, 2009. The test came back positive.
¶ 7. Cooper tested D.W. again in October 2009 for herpes. D.W. was tested for both HSV-I and HSV-II, and the results were negative for both. Cooper opined that D.W. had been exposed to the virus, but she had not experienced an outbreak, so her body had not produced the antibodies against the herpes virus.
*625 ¶ 8. D.W. testified at trial. She described the most recent time Whitfield had molested her. D.W. stated that Whitfield ordered her into the room shared by her mother and Whifield. Whitfield pulled D.W. onto the bed, pulled her pants off, took off his own pants, touched her breast, and inserted his penis into her vagina until “white stuff came out.” D.W. testified that the “white stuff’ got on her, and Whitfield gave her a towel to wipe it off. D.W. stated that this encounter hurt her and caused her to cry. D.W. further testified that Whitfield had “made [her] suck his penis” on several occasions, and he had been touching her inappropriately for a long time. D.W. stated that she had told her aunt about the molestation, but her aunt told her not to tell anyone.
¶ 9. Over the course of the investigation, Whitfield was tested several times for herpes and/or other STDs. On April 16, 2007, Dr. Dennis Smith tested Whitfield for herpes. Whitfield tested positive for HSV-I, but negative for HSV-II. In February 2009, Dr. Harold Thomas tested Whitfield for herpes. The test results were similar to the test conducted in April 2007, indicating that Whitfield tested positive for HSV-I, but negative for HSV-II. Dr. Thomas testified that HSV-I was commonly known as a cold sore virus, and it rarely manifests itself in the genital area. On December 22, 2009, Whitfield tested positive for trichomonas. Wanting a second opinion, Whitfield saw Dr. David Bell the next day, December 23, 2009. Dr. Bell testified that he did not test Whitfield for trichomonas because he had no apparent symptoms.
¶ 10. Whitfield denied the allegations.
DISCUSSION
¶ 11. In his only issue on appeal, Whitfield contends that the guilty verdict for sexual battery is contrary to the overwhelming weight of the evidence. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). Furthermore, it is well-settled law that the jury determines the credibility of the witnesses and resolves conflicts in the evidence. Davis v. State, 866 So.2d 1107, 1112 (¶ 17) (Miss.Ct.App.2003).
¶ 12. Whitfield was indicted for committing sexual battery upon D.W. “by inserting his penis inside the mouth of [D.W.] ” between September 6, 2000, and April 5, 2007. Pursuant to Mississippi Code Annotated section 97—3—95(l)(d) (Rev.2006), “[a] person is guilty of sexual battery if he or she engages in sexual penetration with ... [a] child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child.” According to Mississippi Code Annotated section 97-3-97(a) (Rev.2006), “sexual penetration” includes fellatio.
¶ 13. Whitfield contends that the State failed to prove “sexual penetration” occurred. The only witness to testify as to the sexual penetration was D.W. D.W. testified that Whitfield had made her perform fellatio on him on several occasions. Horn testified that D.W. had also told her what Whitfield had forced her to do. The uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true by the finder of fact. Bell v. State, 835 So.2d 953, 957 (¶ 17) (Miss.Ct.App.2003). The jury as the fact-finder determined the testimony of D.W. to be more credible than that of Whitfield. There is no reasoned basis for this Court to now declare that the jury erred in so finding.
*626 ¶ 14. Whitfield contends that the STD test results contradict D.W.’s testimony. However, although the test was non-specific, D.W. did test positive for the herpes virus. Whitfield tested positive for HSV-I.D.W. and Whitfield also tested positive for trichomonas. It was the jury’s job to make inferences from the testimony concerning the test results. Regardless of any test results, D.W. testified that Whitfield had sexually assaulted her on numerous occasions, and the jury found her testimony to be more credible than Whitfield’s testimony.
¶ 15. Having fully reviewed the record, including the transcript of D.W.’s testimony, we cannot find that allowing the guilty verdict to stand would sanction an unconscionable injustice.
¶ 16. THE JUDGMENT OF THE MONROE COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, FONDLING, AND SENTENCE OF SEVEN YEARS, WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, AND COUNT II, SEXUAL BATTERY, AND SENTENCE OF THIRTY YEARS, WITH THE SENTENCE IN COUNT I TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT II, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY $1,000 IN RESTITUTION TO THE MISSISSIPPI CHILDREN’S TRUST FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MONROE COUNTY.
IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR.

. The Court of Appeals declines to name minor victims of sexual crimes.